**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PETER GOSDEN, d/b/a/ WICKED FISH APPAREL, et al., <br><br> Plaintiff, <br><br> v. <br><br> ERAZORBITS, INC., <br><br> Defendant. | Civ. No. 22-00075 (GC) (DEA) <br><br> **MEMORANDUM OPINION** |

**CASTNER, U.S.D.J.**

  **THIS MATTER** comes before the Court upon Defendant ErazorBits, Inc.'s Motion to Dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (*See* ECF No. 56.) Plaintiff opposed (*see* ECF No. 58), and Defendant replied (*see* ECF No. 59). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Rule 78 and Local Civil Rule 78.1. For the reasons set forth below and for good cause shown, Defendant's motion is **GRANTED** and Counts I through IV of Plaintiff's Complaint (*see* ECF No. 55 ¶¶ 28-51) are **DISMISSED** without prejudice. Plaintiff shall be given thirty (30) days in which to file an amended complaint to the extent Plaintiff can cure the deficiencies identified herein.

I.       **FACTUAL AND PROCEDURAL BACKGROUND**[1]

In April 2021, Plaintiff Peter Gosden, a citizen and resident of the State of Georgia who does business as Wicked Fish Apparel, brought suit on behalf of himself and Wicked Fish L.L.C., a Georgia limited liability company (together, "Plaintiff" or "Wicked Fish"), against Defendant ErazorBits, Inc., a New Jersey corporation ("Defendant" or "ErazorBits"), in the United States District Court for the District of South Carolina, alleging trademark infringement and related state-law claims. (*See* ECF No. 1.) Plaintiff based federal jurisdiction on 28 U.S.C. §§ 1331 and 1338(a), which grants subject matter jurisdiction for questions and actions under federal law related to trademarks. (*Id.* ¶¶ 4-5.)

The action was transferred to the District of New Jersey in January 2022 upon a consent motion (*see* ECF No. 32), and the Court subsequently granted in August 2022 Plaintiff's motion to amend its complaint to add a breach of contract claim (*see* ECF No. 54). Plaintiff's Amended Complaint asserts four causes of action: Count I for Trademark Infringement under 15 U.S.C. § 1114(1); Count II for Unfair Competition under 15 U.S.C. § 1125(a); Count III for False Designation under 15 U.S.C. § 1125(a); and Count IV for Breach of Contract. (ECF No. 55 ¶¶ 28-51.)

Plaintiff is the owner of a United States Trademark for marks that consist of or contain the term "Wicked Fish." (*Id.* ¶ 10.) "Wicked Fish" is known for its high quality and reputable products and has extensive consumer recognition. (*Id.* ¶ 13.) In or around January 2016, Plaintiff entered into a non-exclusive licensing agreement that granted Defendant ErazorBits permission to use the mark "Wicked Fish" on products it sold within the United States. (*Id.* ¶ 14.) In exchange

---

[1]       The factual background is taken from Plaintiff's Amended Complaint. When reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court accepts as true all well-pleaded facts in the complaint. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

for use of the mark, Defendant agreed to pay a non-refundable royalty payment of $7,500.00 and agreed to other terms, including but not limited to providing to Plaintiff proof of adequate insurance, samples of all products sold bearing the mark, and providing quarterly records of sales so that Plaintiff can accurately calculate royalty payments due. (*Id.* ¶¶ 14-16.) Despite Plaintiff's demands, Defendant has failed to make the full $7,500.00 royalty payment[2] and has not abided by other terms and obligations of the 2016 licensing agreement. (*Id.* ¶¶ 14, 17, 20.) Defendant continues, however, to display and use Plaintiff's mark to market its products. (*Id.* ¶¶ 18-23.)

Plaintiff contends that Defendant's actions not only constitute a breach of contract but violate the Lanham Act ("Act"), 15 U.S.C. § 1051, *et seq.*, by infringing on Plaintiff's federal trademarks, constituting unfair competition and false designation. (*See id.* ¶¶ 28-48.)

On September 16, 2022, Defendant moved to dismiss Plaintiff's Lanham Act counts for failure to state a claim pursuant to Rule 12(b)(6). (*See* ECF No. 56.) Plaintiff opposed on October 3, 2022, and Plaintiff replied on October 11, 2022. (*See* ECF Nos. 58 & 59.)

## II.     LEGAL STANDARD

On a motion to dismiss for failure to state a claim, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'" *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Directors of City of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clark v. Coupe*, 55

---

[2]     Defendant noted that Plaintiff had indicated in a prior version of the Complaint that ErazorBits allegedly paid $7,400.00 of the initial $7,500.00. (ECF No. 56-1 at 9-10.) In response, Plaintiff acknowledged that "Defendant issued a check for $7,400.00." (ECF No. 58 at 4.)

F.4th 167, 178 (3d Cir. 2022) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)). When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 903 (3d Cir. 2021)). The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim." *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016)).

## III. DISCUSSION

### A. Counts I Through III: Lanham Act Claims

"Congress enacted the Lanham Act in 1946 in order to provide national protection for trademarks used in interstate and foreign commerce." *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 193 (1985). The Act "was intended to make 'actionable the deceptive and misleading use of marks' and 'to protect persons engaged in . . . commerce against unfair competition.'" *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 767 (1992) (quoting 15 U.S.C. § 1127).

Generally, "[t]o state a claim for trademark infringement, 15 U.S.C. § 1114(1), and unfair competition/false designation of origin, 15 U.S.C. § 1125(a)(1), under the Lanham Act, a plaintiff must show three elements: '(1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion.'" *Juul Labs, Inc. v. 4X PODS.*, 439 F. Supp. 3d 341, 351 (D.N.J. 2020) (quoting *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000) ("We measure federal trademark infringement, 15 U.S.C. § 1114, and federal unfair competition, 15

U.S.C. § 1125(a)(1)(A), by identical standards.")). "A plaintiff bears the burden of proving these elements." *Id.*

Defendant moves to dismiss Plaintiff's trademark infringement and unfair competition/false designation claims under the Lanham Act on the ground that "ErazorBits' use of the Licensed Mark is expressly authorized by [Plaintiff], and an authorized use pursuant to a license is not infringing as a matter of law."[3] (ECF No. 56-1 at 14-15.[4]) Defendant points out that Plaintiff alleges that it entered into a licensing agreement in 2016 to allow Defendant to use the mark "Wicked Fish" on products sold in the United States, and "[t]here is no allegation that the License Agreement terminated or expired – because it remains in full force and effect. Furthermore, there is no allegation that ErazorBits' use of 'Wicked Fish' is in any way inconsistent with the rights granted to it by the License Agreement." (*Id.* at 15-16.) Defendant cites decisions from several federal courts (though none in the Third Circuit) that it submits stand for the proposition that "where the trademark holder has authorized another to use its mark, there can be no likelihood of confusion and no violation of the Lanham Act if the alleged infringer uses the mark as authorized." (*Id.* at 16-17 (quoting *Segal v. Geisha NYC LLC*, 517 F.3d 501, 506 (7th Cir. 2008)).)

---

[3] As part of its motion, Defendant attached exhibits and alleged that Plaintiff "failed to make timely maintenance filings or provide other information required . . . to maintain the Wicked Fish registrations." (ECF No. 56-1 at 10-11.) At this stage, the Court has not considered these exhibits or allegations in reaching its decision. *See Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) ("[W]e accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'" (quoting *Watters v. Bd. of Sch. Directors of City of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020))).

[4] Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

In opposition, Plaintiff does not contend that the license with ErazorBits has been terminated or that ErazorBits has used the mark outside the United States or in a manner that exceeds the scope of what would have been authorized. (*See* ECF No. 58.) Instead, Plaintiff argues that "since Defendant never met its obligations under the terms of the contract the License Agreement was never in effect. As such any use of the Plaintiffs' trademarks by defendant constitutes trademark infringement, unfair competition and false designation of origin." (*Id.* at 2.) Plaintiff underscores that Defendant did not make the full initial royalty payment of $7,500.00 (only paying $7,400.00) and that Defendant did not abide by other terms in the licensing agreement, such as keeping a record of all sales and promptly submitting royalty payments, obtaining commercial general liability insurance, or providing samples of products bearing the mark. (*Id.* at 3-5.) Especially as to the initial royalty payment, Plaintiff insists that this "was a condition precedent to the Licensing Agreement going into effect." (*Id.* at 5.)

This motion raises the issue of when a dispute arising from a license/franchise agreement between the licensor/franchisor and the licensee/franchisee is a common law breach of contract dispute or one of infringement under federal law.

There are several principles a court can consider in determining this issue. *First*, there is no bar to "maintain[ing] both a Lanham Act claim and a claim for breach of contract if both are sufficiently alleged although based on overlapping facts." *Gen. Elec. Co. v. Feuz Mfg., Inc.*, Civ. No. 07-1008, 2008 WL 11355394, at *3 (N.D.N.Y. May 15, 2008) (collecting cases). *Second*, just because a contract dispute involves federal trademarks, copyrights or patents does not automatically translate the contract dispute into a federal cause of action. *See, e.g., Gold Cross Safety Corp. v. PHH Vehicle Mgmt.*, Civ. No. 07-2401, 2008 WL 2625357, at *3 (D.N.J. June 27, 2008) ("The mere fact that a contract dispute involves copyrights, however, does not mean that there is a copyright infringement claim, unless the dispute arises under the federal copyright

6

laws."). *Third*, the critical inquiry is ordinarily whether the allegations arise *under* the license/franchise agreement (such as a licensee failing to make all of the royalty payments or send required reports about sales), which is merely a contract dispute, or whether allegations concern conduct exceeding the scope of the license (such as a licensee using a mark beyond the period of time, geographic scope, or manner permitted by the agreement), which gives rise to federal causes of action for infringement/unfair competition. *Compare Aamco Transmissions, Inc. v. Smith*, 756 F. Supp. 225, 226 (E.D. Pa. 1991) (dismissing Lanham Act claim under 12(b)(6) and noting "that failure to send weekly reports of gross receipts, to pay franchise fees and rent, and to pay for merchandise ordered and received do not state claims which in any way involve injury to the service mark"), *with Greenfield v. Twin Vision Graphics, Inc.*, 268 F. Supp. 2d 358, 370-71 (D.N.J. 2003) (permitting copyright and Lanham Act claims to proceed where plaintiffs "explicitly alleged infringement by [d]efendants through actions such as displaying and copying . . . photographs without [p]laintiffs' consent"; "claims in our case are not for royalties or failure to provide authorship credit as required by the license, but are based instead on [d]efendants' alleged use of . . . photographs in a manner entirely outside the scope of the contract at issue").

The most straightforward examples of a contract dispute pursuant to a license/franchise agreement morphing into federal claims for infringement and/or unfair competition are those where a licensor has terminated a license and the licensee continues to use the mark notwithstanding that termination. *See S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 375 (3d Cir. 1992) ("Once a franchise is terminated, the franchisor has the right to enjoin unauthorized use of its trademark under the Lanham Act."); *Air Express Int'l v. Log-Net, Inc.*, Civ. No. 12-1732, 2016 WL 5334659, at *4 (D.N.J. Sept. 22, 2016) ("[M]any courts [including the Third Circuit] have held that continued trademark use by one whose trademark license has been canceled satisfies

the likelihood of confusion test and constitutes trademark infringement." (quoting *ITT Indus., Inc. v. Wastecorp. Inc.*, 87 F. App'x 287, 293 (3d Cir. 2004))).

In the present action, there is no allegation that the 2016 licensing agreement between Plaintiff and Defendant was ever terminated, and Plaintiff does not so argue in its opposition to the motion. (*See* ECF Nos. 55 & 58.) There is also no allegation that Defendant exceeded the geographic scope of the license, which permitted ErazorBits to sell products bearing the mark "Wicked Fish" across the United States. (ECF No. 55 ¶ 14.) What Plaintiff's Lanham Act claims seemingly rest on is Defendant's alleged refusal to make the full initial and subsequent royalty payments under the licensing agreement and failure to strictly abide by the agreement's other terms, including obtaining insurance and providing samples of products. (*Id.* ¶ 30 ("Plaintiff entered an agreement with Defendant whereby defendant was to meet certain obligations under the agreement in order to receive authorization to use the Plaintiff's Mark. Defendant did not meet the conditions precedent to obtain authorization to use Plaintiff's Mark but nonetheless used Plaintiff's Mark on its products.").) Although Plaintiff argues and alleges that these terms were "conditions precedent," particularly the initial royalty payment, and that Defendant's violations should be interpreted to mean that there was never an operative licensing agreement, this is inconsistent with the plain terms of the agreement itself, which was attached as an exhibit to the Complaint.[5] *See Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 111-12 (3d Cir. 2018) ("As exhibits to her own complaint, these materials were appropriate to consider on a motion to dismiss. They do not require going 'outside the pleadings.' And if her own exhibits contradict her allegations in the complaint, the exhibits control." (citations omitted)).

---

[5]   Defendant also makes the reasonable observation that if Plaintiff believed the licensing agreement had not gone into effect in 2016, one might have expected Plaintiff to have alleged that it informed Defendant that "there was no license . . . [and] that it was not authorized to use 'Wicked Fish' at that time." (ECF No. 59 at 10.) Plaintiff does not so allege. (*See* ECF No. 55.)

Notably, the licensing agreement states that it was effective on January 1, 2016,[6] and nowhere conditions its effectiveness on Defendant making the full initial royalty payment of $7,500.00. (ECF No. 55-3 at 1.) To the contrary, the agreement provides Plaintiff with an express remedy sounding in contract if such payment is not made. (*Id.* ("2.2 If the Licensee defaults in the payment of *any* royalty due under this Agreement, Licensee shall pay Licensor interest . . . ." (emphasis added)).) The agreement also does not condition its existence on the other terms allegedly violated, such as Defendant allowing Plaintiff to inspect products, view samples, review records, or obtain insurance. (*Id.* at 2-4.) Indeed, in the event of the breach of these terms, the agreement states that Plaintiff is entitled "at its option" to sue for damages *or* terminate the agreement. (*Id.* at 5.) Although Plaintiff has now pursued the option to sue for damages, there again is no allegation that the agreement was ever terminated, and the licensing agreement states that it will "automatically renew" annually until one of the parties delivers written notice terminating it. (*Id.*)

In view of the Complaint's allegations and the licensing agreement, the present dispute over royalties and Defendant's compliance with the terms of the apparently still-operative agreement more closely resembles a garden-variety contract action arising under the licensing agreement than a dispute over infringing conduct exceeding the scope of what is authorized by the agreement. *See, e.g.*, *J. of Afr. Civilizations Ltd., Inc. v. Transaction Publishers*, Civ. No. 11-6268, 2013 WL 6498983, at *3 (D.N.J. Dec. 11, 2013) ("[A]n action involving relief under a licensing agreement—such as payment of royalties—is a state law contract claim." (citing *Greenfield*, 268 F. Supp. 2d at 369)); *see also Segal*, 517 F.3d at 506 (affirming dismissal of Lanham Act claim under 12(b)(6) where defendants were authorized to use trademarks and allegations did not support

---

[6] The Court notes, however, that the licensing agreement appears not to have been executed until later in January 2016. (ECF No. 55-3 at 7.)

9

claim that they had not used trademarks "as authorized"); *Stancato v. Versace*, Civ. No. 94-4192, 1995 WL 437532, at *3 (S.D.N.Y. July 25, 1995) (dismissing Lanham Act claim "where a trademark is merely the subject matter of a contract dispute" and plaintiffs "are attempting to enforce their contractual rights"). This is not an instance, for example, where defendant is alleged to have distributed or used the mark beyond the temporal or geographic scope of the agreement, or in a manner not authorized (*e.g.*, selling or transferring ownership where licensee was only authorized to loan). *See Gold Cross*, 2008 WL 2625357, at *4.

The Court, therefore, holds that Plaintiff has failed to plausibly plead a violation of the federal trademark laws and will dismiss without prejudice Counts I through III of the Complaint, which allege trademark infringement and unfair competition/false designation under the Lanham Act. (ECF No. 55 ¶¶ 28-51.)

### B. Count IV: Breach of Contract Claim

Defendant also submits that if the federal claims are dismissed, then the Court should decline to exercise supplemental jurisdiction over the breach of contract claim. (ECF No. 56-1 at 18-19.) Plaintiff asks the Court to hear the claim "regardless of whether the federal claims are dismissed." (ECF No. 58 at 9.)

The only basis the Complaint asserts for the Court to exercise jurisdiction over the state-law breach of contract claim is supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a). (ECF No. 55 ¶ 7.) Given the dismissal of the federal claims over which this Court had original jurisdiction and the relatively early stage of this litigation, the Court will decline to exercise supplemental jurisdiction over Count IV of Plaintiff's Complaint. *See Doe v. Mercy Cath. Med.*

*Ctr.*, 850 F.3d 545, 567 (3d Cir. 2017) ("A court may [decline supplemental jurisdiction] under 28 U.S.C. § 1367(c)(3) when it dismisses all claims over which it has original jurisdiction.").

Nevertheless, the Court notes that the Complaint appears to indicate that the parties are citizens of different states (ECF No. 55 ¶¶ 1-2), yet it makes no mention of diversity jurisdiction and Plaintiff did not attempt to invoke diversity jurisdiction in its opposition to Plaintiff's motion. (*See* ECF No. 58 at 8-9.) Seemingly anticipating this issue, Defendant asserts that the contract claim alone would not give rise to federal diversity jurisdiction pursuant to 28 U.S.C. § 1332 because it would not satisfy the $75,000.00 minimum monetary threshold. (ECF No. 56-1 at 20 n.4.) In the absence of Plaintiff attempting to invoke diversity jurisdiction and no argument made as to how diversity would be satisfied here if the federal claims are dismissed (and Defendant explicitly arguing as to why it would not be), the Court is unable on its own initiative to find that diversity would be appropriate. *See Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 395 (3d Cir. 2016) ("[T]he party invoking diversity jurisdiction . . . bears the burden to prove, by a preponderance of the evidence, that the amount in controversy exceeds $75,000.").

Accordingly, Count IV of Plaintiff's Complaint for breach of contract is dismissed without prejudice. (ECF No. 55 ¶¶ 49-51.)

## IV.   CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss (*see* ECF No. 56) is **GRANTED** and Counts I through IV of Plaintiff's Complaint (*see* ECF No. 55 ¶¶ 28-51) are **DISMISSED** without prejudice. Plaintiff shall have thirty (30) days in which to file an amended complaint to the extent Plaintiff can cure the deficiencies set forth herein. An appropriate Order follows.

Dated: April 25, 2023

_____
**GEORGETTE CASTNER**
**UNITED STATES DISTRICT JUDGE**

12